IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ras. Stefen E. Harris, ) | C/A No.  0:15-4173-HMH-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Warden Eagleton; Asso. Warden Bradshaw; ) | |
| Chaplain Wilks; Capt. Kelly; Director Byars, ) | |
| *being sued in their individual and official* ) | |
| *capacities as an employee in the scope of* ) | |
| *official duties and Public Duty Rule*; S.C. ) | |
| Dept. of Corrections, *being sued as an agency*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Plaintiff Ras. Stefen E. Harris, a self-represented state prisoner, filed this action against the named defendants pursuant to 42 U.S.C. § 1983.[1]  This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on the defendants' motion for summary judgment.  (ECF No. 27.)  Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Harris of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion.  (ECF No. 28.)  Harris filed a response in opposition to the defendants' motion[2] (ECF No.

---

[1] The defendants removed this case from the Richland County Court of Common Pleas.

[2] To the extent Harris may be attempting to raise additional claims in his response in opposition which were not presented in the Complaint, such claims are not properly before the court. White v. Roche Biomedical Labs., Inc., 807 F. Supp. 1212, 1216 (D.S.C. 1992) (holding that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"); see also Bridgeport Music, Inc. v. WM Music Corp., 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment).



43), and the defendants replied (ECF No. 49). Having reviewed the parties' submissions and the applicable law, the court finds that the defendants' motion should be granted.

## BACKGROUND

The following facts are viewed in the light most favorable to Harris and are taken from Harris's Complaint, to the extent they find support in the record. Harris identifies himself as practitioner of the Rastafarian faith. He alleges that when he arrived at the Turbeville Correctional Institution ("TCI"), no Rastafarian classes or services existed. Harris followed the process to apply for the establishment of Rastafarian worship services, and his request was granted. The first Rastafarian worship service was held "without incident" on August 4, 2012. Two days later, Harris alleges that he was instructed to pack up his belongings and was informed that he was being placed in "lock up." On his way to lock up, Harris alleges that he encountered three other Rastafarian inmates who had participated in the application process and who were also being placed in lock up. Harris alleges that he was strip searched and given a form signed by Defendant Kelly that indicated he was being placed in lock up pending transfer. Harris further alleges, however, that the order to lock him up came from Defendant Bradshaw. Harris alleges that when placed in lock up, he was forced to dispose of food items that he had recently purchased from the canteen, as he was advised that he could not keep any food items due to a mice and rat infestation. Harris further alleges that he was kept in lock up for seven days until he was transferred to a different facility. During this time he alleges he did not receive his vegetarian diet. (See generally Compl., ECF No. 1-1.)



# DISCUSSION

### A.   Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate.  Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see,



e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.     Defendants' Motion for Summary Judgment**

**1.     Retaliation**

The crux of Harris's Complaint appears to be that he was retaliated against for attempting to exercise his First Amendment rights. Specifically, he alleges that he, along with three other inmates, applied and was approved for establishment of a Rastafarian Worship Service at TCI. He appears to allege that his lock up and subsequent transfer were in retaliation for him practicing his Rastafarian faith.

To state a claim for retaliation under § 1983, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id. at 74. An inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. See, e.g., Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996); Hughes v. Bedsole, 48 F.3d 1376, 1387 n.11 (4th Cir. 1995). An inmate must also demonstrate facts showing that he "suffered some adversity in response to [his] exercise of [constitutionally] protected rights." Am. Civil Liberties Union v. Wicomico Cty., 999 F.2d 780, 785 (4th Cir. 1993). Further, claims of retaliation by inmates are generally regarded with skepticism because "[e]very act of discipline by



prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Cochran, 73 F.3d at 1317 (alteration in original) (quoting Adams, 40 F.3d at 74).

In support of their motion for summary judgment, the defendants have provided affidavit testimony from Defendant Linda Bradshaw, the associate warden in charge of programs and youthful offenders at TCI during the time period at issue. Bradshaw's testimony describes TCI as one of three SCDC institutions that houses inmates sentenced under the Youthful Offender Act ("YOA"). (Bradshaw Aff. ¶ 5, ECF No. 27-2 at 2.) According to Bradshaw, the YOA program focuses on rehabilitation and reducing recidivism and, to that end, the TCI administration is especially mindful of the potential for adult offenders to negatively influence youthful offenders through manipulation and coercion. (Id. ¶¶ 6-9.) Bradshaw avers that "although every effort is made to maintain segregation between the youthful and adult offenders, one of the most frequent ways that the two populations interact is through worship services," and that, in the past, adult inmates have used this opportunity to exert additional control and influence of youthful offenders. (Id. ¶ 13.) Bradshaw testifies that "in 2012, Harris expressed interest in beginning worship services for the Rastafarian faith." (Id. ¶ 14, ECF No. 27-2 at 3.) She avers that a minimum of three inmates is required to request services for a particular religion and that, although there were other Rastafarian inmates at TCI prior to Harris's arrival in 2010, none had expressed interest in worship services. (Id. ¶¶ 15-16.) Bradshaw avers that Harris's request was approved, and that it is her belief that she counseled Harris regarding the "importance of being cautious with the influence [adult inmates] wield" with the youthful offenders at the worship services. (Id. ¶ 18.) Bradshaw testifies that, almost immediately after the Rastafarian worship services began, she began receiving complaints from other inmates—including other Rastafarian inmates—that Harris was attempting to control and convince



other inmates to do things for him or give things to him—precisely the type of behavior that was concerning to Bradshaw. (Id. ¶¶ 19-21, ECF No. 27-2 at 4.) Review of Harris's disciplinary history solidified Bradshaw's concerns that Harris would be a bad influence on the youthful offenders, and she avers that she contacted the state classification office to seek Harris's transfer to another institution. (Id. ¶¶ 25-26.) Bradshaw concedes that two other inmates were transferred around the same time because of similar concerns, but she avers that the fact these inmates were also Rastafarian was a coincidence. (Id. at 27.) Bradshaw testifies that the processes used to transfer Harris are standard procedure and are not punitive in nature, and avers that the amount of time Harris spent pending transfer was "no longer than it took for the state classification office to find an available bed for [Harris] at another institution." (Id. ¶¶ 28-29, ECF No. 27-2 at 5.)

Harris's conclusory assertions without more are insufficient to establish a retaliation claim, much less refute the defendants' properly supported motion for summary judgment. See Adams, 40 F.3d at 75; see also Fed. R. Civ. P. 56(c), (e); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Harris has failed to provide any support for his belief that the defendants' actions with regard to this incident were not related to a legitimate penological interest but rather were in retaliation for Harris's attempt to exercise his First Amendment right to practice religion. Furthermore, there is no constitutional right for a prisoner to be housed in a particular institution, at a particular custody level, or in a particular portion or unit of a correctional institution. See Meachum v. Fano, 427 U.S. 215, 225 (1976) (holding that the Constitution's Due Process Clause does not "protect a duly convicted prisoner against transfer from one institution to another within the state prison system"); McKune v. Lile, 536 U.S. 24, 39 (2002) (noting that the "decision where to house inmates is at the core of

prison administrators' expertise"). Accordingly, the defendants should be granted summary judgment with regard to Harris's retaliation claims.

### 2. Religious Land Use and Institutionalized Persons Act

Harris mentions the Religious Land Use and Institutionalized Persons Act ("RLUIPA") in his Complaint; however, the basis for such a claim is unclear. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Harris has failed to allege any facts, much less present evidence, that would support a determination that a substantial burden was imposed on his religious activities. Moreover, even if Harris had alleged sufficient facts, RLUIPA does not authorize suits for monetary damages against state prison officials for actions taken in their official or individual capacities because RLUIPA does not waive a state's sovereign immunity. See Sossamon v. Texas, 131 S. Ct. 1651, 1660 (2011); Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009). Further, the only injunctive relief sought by Harris is for the defendants "to discontinue the practice[] of discriminatory practice it has been engaging in against Rastafarians." (Compl. at 8, ECF No. 1-1 at 9.) Even if such relief were not rendered moot by Harris's transfer to another facility, Harris has failed to identify the practice to which he refers. Moreover, the defendants have presented unrefuted evidence that following transfer to Kershaw Correctional Institution, Harris has continued to be an active participant in the Rastafarian religious activities and services. (See ECF No. 27-3.)



3.      **Defendants Eagleton, Byars, and Wilks**[3]

Harris specifically states in his Complaint that his claims against Defendants Eagleton and Byars arise in their supervisory capacities as warden of Turbeville Correctional Institution and the director of the South Carolina Department of Corrections, respectively. Additionally, he states that his claims against Defendant Wilks arise in his role of "guardian[] over chaplain services" at Turbeville. (Compl., ECF No. 1-1 at 3.) The defendants argue that any claims against these defendants should be dismissed as Harris has failed to allege that they had any personal involvement in the alleged deprivation of Harris's constitutional rights.

The law is clear that personal participation of a defendant is a necessary element of a § 1983 claim against a government official in his or her individual capacity. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Moreover, a claim based upon the doctrine of *respondeat superior* does not give rise to a § 1983 claim. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676. As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term

---

[3] The defendants argue that Defendants Eagleton and Wilks are not proper defendants in this action in that Eagleton has never been the warden of TCI and Wilks has never been the chaplain at TCI. (Defs.' Mem. Supp. Summ. J., ECF No. 27-14 at 3.) Subsequent to the defendants filing their motion for summary judgment, Harris moved to amend his Complaint to substitute the correct warden defendant and to substitute "John Doe" for the chaplain defendant. (ECF No. 32.) Harris's motion was denied as futile, however, as he had not alleged any factual allegations against the original defendants he sought to replace and because he had not provided a proposed amended complaint alleging any factual allegations against the proposed new defendants. (ECF No. 38.) Additionally, the defendants note that Defendant Byars is no longer the director of the South Carolina Department of Corrections.



'supervisory liability' is a misnomer." Id. at 677. Indeed, the dissent in Iqbal opined that, "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 693 (Souter, J., dissenting).

While Fourth Circuit precedent recognizes that supervisory officials may be held liable in some circumstances for constitutional injuries directly inflicted by their subordinates, Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), certain criteria must be demonstrated to trigger such liability. A plaintiff must show that the supervisory official (1) was actually or constructively aware of a risk of constitutional injury, (2) was deliberately indifferent to that risk, and (3) that an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999). "Under the first prong of Shaw, the conduct engaged in by the supervisor's subordinates must be 'pervasive,' meaning that the 'conduct is widespread, or at least has been used on several different occasions.' " Randall v. Prince George's Cty., 302 F.3d 188, 206 (4th Cir. 2002) (quoting Slakan v. Porter, 737 F.2d 368, 373 (4th Cir. 1984)). Additionally, "in establishing 'deliberate indifference' under Shaw's second prong, a plaintiff '[o]rdinarily . . . cannot satisfy his burden of proof by pointing to a single incident or isolated incidents . . . for a supervisor cannot be expected . . . to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct.' " Id. (quoting Slakan, 737 F.2d at 373); see also Green v. Beck, 539 F. App'x 78, 80-81 (4th Cir. 2013) (affirming that the alleged failure of supervisory officials to investigate grievances was, on its own, not sufficient to establish a constitutional violation).

Harris's general allegations in his Complaint are insufficient to establish that these defendants had knowledge of any purported constitutional violation. See Shaw, 13 F.3d at 799. In



response to the defendants' motion, Harris argues that Defendants Eagleton and Byars responded to his Step One and Step Two grievances.  However Harris has failed to establish that the conduct stemming from the single incident regarding his lock-up, transfer, and loss of property about which he complains is "pervasive."  See Randall, 302 F.3d at 206.  Additionally, as discussed above, Harris fails to demonstrate a cognizable constitutional claim against Defendants Kelly or Bradshaw or any constitutional injury resulting from their actions.  Accordingly, any claims alleged against these defendants in their supervisory capacities should be dismissed.

**4.     South Carolina Department of Corrections**

Defendant South Carolina Department of Corrections ("SCDC"), as an agency of the state, is not a person within the meaning of § 1983, and thus is not a proper defendant.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Therefore, SCDC should be dismissed from this action.

**5.     Other Claims**

To the extent Harris alleges that he did not recieved his specialized diet while in lock up, the court notes that Harris freely admits that he did not submit the necessary request for such an accommodation.  (Compl. ¶ 37, ECF No. 1-1 at 5.)  Similarly, to the extent Harris attempts to allege a due process violation in that he did not receive notice or a reason for his lock up status, his own filings belie such assertions.  (Compl. ¶¶ 26-27, ECF No. 1-1 at 4) (acknowledging receipt of the form notifying him of placement in pre-hearing detention); (Pl.'s Resp. Opp'n Summ. J, ECF No. 43 at 7) (noting that Defendant Kelly "signed off" on the form and added a "new term" that was used "as a justified means of being placed in lock-up").  Further, any claims Harris may allege with regard to the grievance procedure are unavailing.  See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994)



("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state."); see also Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) ("[A] prison official's failure to comply with the state's grievance procedure is not actionable under § 1983.").

Finally, even if the court were to construe Harris's Complaint as alleging the defendants violated the Due Process Clause by depriving him of his personal property when, upon placing Harris in lock-up pending his transfer, they allegedly confiscated food items he had previously purchased at the canteen, an intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. Hudson v. Palmer, 468 U.S. 517, 533 (1984); see also Mora v. City of Gaithersburg, 519 F.3d 216, 230-31 (4th Cir. 2008); Bogart v. Chapell, 396 F.3d 548, 561-63 (4th Cir. 2005) (finding that intentional destruction of the plaintiff's animals did not violate the due process clause where plaintiff was afforded a meaningful post-deprivation remedy). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization, which provides "a post-deprivation remedy sufficient to satisfy due process requirements." McIntyre v. Portee, 784 F.2d 566, 567 (4th Cir. 1986) (citing Parratt v. Taylor, 451 U.S. 527 (1981) & S.C. Code Ann. § 15-69-10 et seq.).

To the extent Harris is attempting to assert any other claims not specifically addressed above, his Complaint fails to state a plausible claim for relief. See Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009). Additionally, any claims alleged by Harris that fail to specifically allege personal participation by a named defendant also should be dismissed. Iqbal, 556 U.S. at 676.

## RECOMMENDATION

For the foregoing reasons, the court recommends that the defendants' motion for summary judgment be granted. (ECF No. 27.)

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

July 13, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).